Good morning. My name is Don Willenberg. I represent four of the University of California officers. I will be addressing the court with respect to the second qualified immunity prong fairly established. Co-defendant counsel for the City of Davis officers will address the issue of whether the amount of force used was reasonable and therefore constitutional. I'd like to reserve a minute for rebuttal. I'm sorry, but you're the counsel for which officers? University of California officers. Now, I understand you're taking issue two of qualified immunity and your other counsel is taking issue one. Yes. Other than that, is there a difference between the two groups? No. Thank you. No. This is a case about the police response to a drunken student party that involved a thousand people, that turned into a riot that engulfed a six-building apartment complex of three to four stories each. People were throwing bottles. They were throwing rocks at officers, at each other, and at cars. The police were heavily outnumbered. The police had made several attempts to disperse the crowd. At one point, they were forced to beat a retreat away from the apartment complex back to the City of Davis police headquarters. The police hollered orders to stay inside or disperse. Plaintiff Tim Nelson heard those orders. He obeyed them and he stayed inside until he did not. The police were firing pepper balls mostly at walls and doors to try to release the powder inside and induce people to leave the area. Nelson was accidentally hit by a pepper ball. No one thinks that the police were intending to shoot him. Qualified immunity exists to give government officials a reasonable breathing room to make reasonable but perhaps mistaken judgments about open questions. It prevents or protects everyone except the plainly incompetent or those who are knowingly violating the law. Existing precedent must put the question beyond debate to find officers liable for 1983 violations. There is no way that existing precedent in 2004 put beyond debate the question of whether officers could use pepper balls in this situation, in this set of circumstances. The only cases cited by the district court opinion and the two cases relied on mostly by Nelson are Dayoral and Headwaters. And this case is no Dayoral and it is no Headwaters. In Headwaters, there was direct application of the chemical agents to the eyes of the protesters. In this case, there is firing a ball at a distance. And the greater the distance, presumably the lesser the kinetic impact. In Headwaters, the police had preplanned to use these deliberately painful compliance techniques despite the fact that they had encountered the same kind of demonstrations multiple times in previous years and had not used those pain compliance techniques. In the present case, it was an unanticipated civil disturbance and other alternatives to try to get the crowd to disperse had failed. In Headwaters, we had clearly passive protesters engaged in a nonviolent protest. Here, the individuals, including Tim, were part of a group that was part of a larger and a violent crowd. They were outside. They were not leaving contrary to direct police orders. This was not, as I think Nelson may try to paint it a little bit, that somehow there was this few very peaceful individuals in a crowd of people who were otherwise rioting. This wasn't the eye of the hurricane. This wasn't an island of lambs surrounded by a sea of wolves. When you look at it from the perspective of a reasonable officer at the time, there was nothing certainly that Headwaters would say that you couldn't use pepper balls in this situation. In Headwaters, and sometimes officers refused to wash the pepper spray out of the in pain and crying protesters' eyes. None of that in our case. What's the difference between a pepper ball and just pepper spray? The pepper ball contains a substance inside that has a pepper-like effect. And one of the differences is that spray is liquid. And again, in the Headwaters cases, they were applying it directly to surfaces. In a pepper ball, either you may feel the kinetic impact of the ball hitting you, or it releases this powder, which has a similar effect. It is an irritant. It is definitely an irritant. It is more diffuse because you're releasing it into the air rather than spraying it directly on someone's eyes. And so it is similar, but it is not the same weapon. It is not the same weapon. In De Oro, the other case on which both the district court and Nelson rely is even further from this situation. In De Oro, an officer shot an emotionally disturbed individual in the face without any warnings, without any threat to public safety, without actually even telling the person, hey, if you come closer, I'm going to shoot you. Some of what was the worst part, I suppose, in De Oro is the person who fired was actually a member of the special incident response team who came supposedly trained for just this. He watched De Oro for five to ten minutes and then decided, well, if he gets close enough to me, I'm going to shoot him. There wasn't any of that kind of time for deliberation in this case. In contrast, what limited precedent there was would have supported the officer's use of force here. Between both sides, we found only one pre-2004 pepper ball case. That's Moore v. Baca. It was an Eighth Amendment district court case that allowed the use of pepper balls for crowd control in a prison riot situation. Not the same thing that we have here, definitely, but at least it's somewhat closer. There is simply no way you can get from De Oro or Headwaters or any other case to say that you're close enough to the facts of this case that no reasonable officer would have thought it was legal to use pepper balls for a crowd dispersal situation. Well, what do we do with the things like the, you know, the manual of the police department or the post-training manuals that tell you how you're supposed to use that? I mean, they were aware of that, right? They're aware of that. And would you say using it contrary to the post directive is a, you know? Yeah. It was not contrary to post. What post says is that you can more reliably target individuals from 30 feet or less, but that you can use pepper balls for area saturation or area denial purposes for up to 100 feet. But this wasn't used for area saturation, was it? Well, it was used for area saturation. It was. But even if, even if you get as far as I think the district court did, which I think is a little further than you can get from this record, even if you could say that there is some factual issue as to whether or not the group itself was targeted, I'll go back to, and what case said that you can't use pepper balls even firing, even if you are going to fire at individuals in crowd control situations? What case said that that is unconstitutional? And no case said that. And city of Davis counsel will now explain why no case said that, because it isn't unconstitutional in this circumstance. All right. Good morning, Your Honors. John Whitesides, 4, defendant, city of Davis, Sergeant John Wilson, and Chief James Hyde. In the short story, The Lottery, we are warned about the dangers of repeating past conduct without asking the question, why? Why are we doing this? I believe that's where the district court went astray with respect to the issue of seizure. The district court looked at the impact on the plaintiff. He was hit with the projectile and felled. And then the district court looked at what's the evidence as to whether he was the target, and concluded that the evidence was mixed on that. There was some evidence that he was a target or a member of a targeted group. There was other evidence that he wasn't, that he was inadvertently hit as a bystander, so to speak. Well, under that theory, what was the target? We don't know. Or was there no target at all? We don't know. And they were just shooting their guns aimlessly. It depended on who was shooting. The testimony varies depending on whose testimony it is. So you have testimony of one officer that I'm shooting at the walls and the ceilings to break the spray apart and create that saturation that counsel spoke of just now. You have other testimony that I shot at a particular person, the man, for example, that's running out towards the police. So we don't know whether the projectile that hits the plaintiff is intended for a person or intended for an inanimate object. Luckily, we don't need to resolve that at this point. But is there a, is there a way to resolve that?   I don't know. I don't know. But is there a testimony that at least some of the shots were aimed at, like, the wall or, you know? Yes. Something other than a demonstrator or a party goer? Yes. Several officers testified that they fired at inanimate objects rather than people. Which is, at that distance, takes a substantial risk that it will end up with the people. Yes. Certainly the further away you are, the harder it is to hit your target. There's no doubt about it. And I don't want to diverge too much from my seizure issue, but the flip side is you're also losing velocity the further back you are. And you have a fairly low velocity weapon to start with. Also, the evidence shows that the officers throughout the night are under attack by bottles. So the closer you get to your targets, the closer your targets are to you. So there's a tradeoff, so to speak, between the ideal situation of making sure you can't possibly miss your target and your own personal safety. Back to the seizure issue. What the district court didn't do is ask why. Why were the shots fired? Not what was the target, but what was the purpose of firing in the first place? And what we know from the various Supreme Court cases and from this Court's decision in Al-Nusra is that the purpose of the shot has to be to incapacitate or subdue the target. Ninety-nine percent of the time in a shooting, that's what happens because you're using a firearm or a taser. And those devices are designed to incapacitate. So this question rarely comes up. And the district court mechanically just said, well, someone was shot and hit, therefore there's a seizure unless the evidence is clear that he wasn't the target. But it's not that simple because if the purpose of the shooting is not to incapacitate. So are you saying that recklessness is insufficient? It's got to be purposeful conduct? Correct. It has to be willful. Willful. Deliberate. And what case supports that, that recklessness is not sufficient? That would be this. Well, none of the cases talk about whether or not it is reckless. But the language that's willful, the language that there has to be an intent to acquire dominion over the target such that the target is not free to leave the officer's presence would be this Court's decision in Al-Nassar and the Supreme Court's decision in Al-Nassar. And that would be this Court's decision in Al-Nassar. And the line of cases recognize that in certain situations recklessness is sufficient. But not for the purpose of a seizure. Well, why not? Well, in that case, the claim was that the officer's driving recklessly, pursuing the kid on the motorcycle. But the court still finds no seizure because it's undisputed that he does not intend to collide. No. The reason they don't find a seizure is because he doesn't have time to contemplate. If you're in a situation where you have time to think and contemplate, then recklessness is sufficient. In other words, in this case, they formulated a plan. But the plan was not. In that sense, it's intentional. Well, the plan was to disperse, not to seize. The plan was to fire these, you know, these paintball guns. Right, but not for the purpose of seizing. That doesn't matter. Yes, it does. I fired at him to hit him in the leg, not his heart. That doesn't make any difference. But you're not trying to seize. Well, it depends. That's what I said. Recklessness is enough, even though you're not trying to seize. If your conduct is intentional. Well. You know that it may have the effect of seizing. You do it. It's unlikely. It's a possibility, but it's unlikely. You're not going to normally incapacitate someone by hitting them with a pepper ball. It's not like a bullet or a beanbag round or a taser. Well, a beanbag ball doesn't, bag doesn't usually incapacitate. But it. It happened to hit him in the eye. Sure. And this one happened to hit him in the eye, too. Right, but there's no evidence that they were trying to do that. And throughout the night. I wasn't trying to hit him in the eye the other time, either, with a beanbag. No, but that was also not a riot, and there was not an effort to disperse the person. That's a different question. The question was, if you fire knowing that there's a risk, and you deliberately then fire, and even though you don't think the risk will occur, is that the seizure? That's the question. I would say no where the risk is low. And here the risk was low. Look at all the pepper balls that were fired throughout the night. Only one person was incapacitated. Nobody else. Even though there were hundreds of rounds fired. So clearly the risk of incapacitation was very low. If he's hit in the chest, in the leg, in the arm, in the hand, he's not incapacitated. And then we get to the separate issue of, was there clearly established law in 2004 that would have told the officers that this action would be a seizure? And there was not. There were no riot or crowd dispersal cases in 2004 where the seizure issue, as this panel has just discussed it with me, was articulated. There was a similar one years later out of Florida where the district judge finds no seizure because the people were shot, they dropped, and the officers move on. And the district judge says no seizure. And that's the round case out of Florida. Well, that's an odd position because they moved on, it was no seizure. Right. But that was the same judge who had earlier found the seizure as two different plaintiffs who had been encircled or herded. So in the judge's mind, she's making a distinction between those people who aren't free to leave the officer's presence and the people who are. And that's the critical distinction here, is the effort was to get them away, leave, go, not you have to stay with us, whether it's temporarily or permanently. They're trying to get them to leave. And unlike the other cases that this Court's decided, like Dioral, here other let I think you're well over the top. Oh, I'm sorry, Your Honor. Sorry. Don't be sorry, but I didn't keep track. Thank you. Good morning, Your Honors. Adante Poynter on behalf of the appellee. Your Honor, the district court decided this case correctly. The appellants are not entitled to a qualified immunity to escape liability or responsibility for the injurious force that they used against Mr. Nelson because the force, the immunity, was not qualified in the sense that it was clearly established at this particular point in time, April of 2004, that a reasonable officer would know that you cannot use the force that was used to injure Mr. Nelson, meaning less lethal projectiles, against a nonthreatening, unarmed person as a means to disperse and or to move a person. And that's what constituted the seizure in this particular case. Mr. Nelson was a person who was present at a college party, an annual college party, that had grown out of hand. It was not a riot. Looking at the facts in a light reasonable and in a light that's favorable to Mr. Nelson, this was not a riot. And, in fact, Mr. Nelson was a part of a group of college students who were caught up in this disturbance and were simply trying to leave. And at the point they were trying to leave, they were confronted by a phalanx of officers who had pepper guns trained at this group and were ordered into the group. Kennedy. Well, you know, pepper guns are, I guess they use them because they're less lethal than other kinds of weapons, but what's your response to Mr. Whiteside's argument that, well, you have to have some purposeful conduct in the sense that there has to be some intent, you know, to harm or incapacitate? Well, I think that the record shows that there was intent here as relates to firing these guns in the direction of this particular group of people. There was not the fast-changing circumstances as had been present in some of the other cases. Let me say, firing at this group, most of the rounds, like, this was like in a, what is it, like a breezeway or some enclosed area, right? Yes, it was, Your Honor. And most of the rounds went above the crowd and hit, like, the sides of the walls and the top and stuff like that, right? Apparently so, Your Honor. Well, so it was not aimed specifically, you know, to injure people, right? Well, I think that given that the officers knew that at the distance they were from this group, they did not have an ability to control this particular weapon. So that means they were negligent. No, that means that they were reckless and they intentionally fired and used a weapon that they knew they could not control where this, where the trajectory of this less lethal pepper ball was going. And as Your Honors have already pointed out in their training, the case law, and what was just common sense, aiming a weapon that's less lethal but has a potential to essentially harm a person by striking them in their eye, groin, and or spine is reckless. And they did it intentionally on the orders of Sergeant Wilson. And these officers had been trained and knew very well on that night that they could not control the trajectory of the pepper ball, which made the pepper ball use of it reckless. And it was an intentional and deliberate act, which is what the district court found as it relates to the deployment of the pepper ball in this particular firing of it. While there was a larger context of what was taking place, it was not a riot. And more importantly, the analysis under Graham, we are to analyze each use and application of force. And that's what we have here. What was going on at other parts of the party or other parts of this disturbance is not relevant to that when the trigger was squeezed at this particular moment and Mr. Nelson was hit in his eye. And he was a part of party goers. And there's no record, no evidence in the record that shows that Mr. Nelson or anybody that he was with were throwing bottles, were hurling obscenities at these officers, or causing any type of disturbance. What they were simply trying to do was to leave. And they were sent. Under the law at the time this happened, which was, what, four or five years ago, what's the best case that would inform a police officer that the law was clearly established that the conduct here was unconstitutional? What's the best case you can cite for that? Well, Your Honor, I think those cases have been cited. And that's Diorrele as well as the Headwaters. Both of those cases, in terms of Diorrele, the facts, I would say, were actually But those, both of those cases were intentional conduct directed specifically at the individual. Right? Well, as Which is not true. I don't think that's true in this case. Well, in this case The record doesn't show that. Well, what we have in this case is that the officers intentionally fired upon a group that had been standing there for some period of time. It's not like this group of people appeared out of thin air and the officers were firing at a wall and all of a sudden people appeared. The officers saw this group. Apparently, they gave orders, but from the group's perspective and in reviewing the record, in a light most favorable to Mr. Nelson. So in that situation, then, let me ask the question again. What's your best case that shows the law was clearly established, that it was unconstitutional to fire these kinds of, you know, less than lethal balls of pepper spray, I would say, towards, at least towards the crowd generally? What's the best case that says that's unconstitutional? Once again, Your Honor, I would rest on Diorrele and the Headwaters. And in those cases, the Court pointed out that although you may not have a case that's at this point in time that you cannot use this degree of force upon a person who was unarmed, nonthreatening, and just for the government interest of just dispersing a crowd or a person. And so with that being said, I think that those are the two best cases, although they're not directly on point as it relates to the pepper ball, but they are on point as it relates to a less lethal projectile as well as to the use of the OC spray. OC spray, the Court found in the Headwaters case, had never been used against nonviolent protesters who were not offering nonactive ñ I mean, who were not offering active resistance. There's nothing in the record here that shows Mr. Nelson did anything close to actively resisting these officers or being threatening. And so with that being said, the precedent was clearly established. The law, the contours were firm and secure in that the officers were not to use this type of injurious force, meaning firing a pepper ball indiscriminately and arbitrarily into a crowd where they cannot control the trajectory and hitting Mr. Nelson in the eye, effecting the seizure. Now, there was violence, isn't that ñ we have to concede that there was some violence going on? Yes, Your Honor. There was acts of violence in other parts of the party and at other times. But when this particular force was used, there was not violence taking place. There was a person who was above where Mr. Nelson and his group were at that dropped a single bottle. That is what the record shows. There's nothing in the record that shows that Mr. Nelson or anyone in his group acted in a violent or threatening way. And so once again, under the Graham analysis, we look and evaluate each application of force at the time it's used. But there were at least other people conducting acts of violence, and there was this one act right there. There was one person who dropped the bottle, Your Honor, and there were other things that took place earlier and or later in the party. But at this particular point in time, when these pepper balls were trained on these young college students, they were not a part of that disturbance in terms of creating a disturbance, participating in any violence, or encouraging the violence. What they were trying to do was to be peaceful and remove themselves from the situation. In the context of the police giving orders that were not amplified, there was no loudspeaker. The young people could not hear what the officers were saying, and they had their hands up. At that point in time when the force was used, when those triggers were pulled on those pepper balls, there was no basis to use force against Mr. Nelson or those group of young people. If there aren't any other questions at this point in time, I'll tell you the rest. Thank you. The term for rebuttal is over. Over. Thank you. Thank you all very much. The case is argued and submitted. The next case on the calendar is Snow v. McDaniel.
judges: Fletcher, Reinhardt, Tashima